## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

IN RE:

      LIFE CHANGING MINISTRIES
      INCORPORATED,

                               CASE NO.: 12-06488-3F1

                    Debtor.

_____

### CENTERSTATE BANK OF FLORIDA, N.A. MOTION TO DISMISS CASE, OR, ALTERNATIVELY, FOR RELIEF FROM THE AUTOMATIC STAY AND INCORPORATED MEMORANDUM OF LAW

Secured Creditor, Centerstate Bank of Florida, N.A., hereinafter referred to as "Centerstate", by and through its undersigned counsel and pursuant to Sections 1112(b) and 362(d) of the Bankruptcy Code (the "Code") and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure, respectfully moves to dismiss the above-captioned proceedings, or, alternatively, for relief from the automatic stay as it applies to Centerstate so that Centerstate may continue its state court foreclosure proceedings through sale, certificate of title, and possession, and have the state court enter all necessary orders, judgments, and decrees associated therewith. In support of the relief requested herein, Centerstate states as follows:

### Jurisdiction and Venue

1.     This court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334.

2.     This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), as this Motion concerns the administration of the Debtor's Chapter 11 bankruptcy estate.

1

3.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## Procedural and Factual Background

4.      On October 3, 2012 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Code.

5.      Centerstate holds a perfected security interest and lien on the Debtor's real and personal property located in Marion County, Florida, including all rents and proceeds derived therefrom, pursuant to the pre-petition loan documents, which are identified more fully below.

6.      On or about April 17, 2001, Life Changing Ministries, Incorporated ("Life Changing" or "Debtor") executed and delivered to Centerstate's predecessor-in-interest, Independent National Bank, a Promissory Note in the principal amount of $83,750.00 (the "Note"). A true and correct copy of the Note is attached herewith as Exhibit A.

7.      To secure payment of the Note, Life Changing executed and delivered to Independent a Mortgage dated April 17, 2001, and recorded on April 19, 2001, in Official Records Book 02939, Page 1774 of the Public Records of Marion County, Florida. A true and correct copy of the Mortgage is attached herewith as Exhibit B.

8.      The Mortgage encumbers the real property (the "Property") situated, lying, and being in Marion County more particularly described as:

> COMMENCING 830.95 FEET WEST OF THE NORTHEAST CORNER
>
> OF THE SOUTHEAST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 6,
>
> TOWNSHIP 15 SOUTH, RANGE 22 EAST; THENCE SOUTH 636.20
>
> FEET TO THE NORTH LINE OF A GRADED ROAD; THENCE WEST
>
> ALONG SAID LINE OF GRADED ROAD 166.21 FEET; THENCE

NORTH 636.35 FEET; THENCE EAST 166.21 FEET TO THE POINT

OF BEGINNING.

STREET ADDRESS: 837 NW 22nd Street, Ocala, Florida 34475.

9.     Pursuant to the terms of the Note, the obligations under the Note were due in full

by April 17, 2006.

10.    Life Changing defaulted on its obligation under the Note and failed to pay-off the

Note by its maturity date.

11.    Thereafter, on or about April 17, 2006, Life Changing executed and delivered to

Independent a Modification of Mortgage, pursuant to which Life Changing borrowed additional

$26,537.93 and extending the maturity date of the Note to April 17, 2011 (the "Modification").

A true and correct copy of the Modification of Mortgage is attached herewith as Exhibit C.

12.    Life Changing, once again, defaulted on the terms of the Note and the

Modification of Mortgage, by failing to pay to Independent all sums due under the Note at the

scheduled maturity date of April 17, 2011 (the "Default").

13.    On or about August 3, 2012, Federal Deposit Insurance Corporation, hereinafter

referred to as "FDIC" acting in its capacity as the receiver of Independent assigned Life

Changing's Note, Mortgage and Modification of Mortgage to Centerstate, pursuant to a

Receiver's Assignment of Note and Mortgage, a copy of which is attached herewith as Exhibit D.

14.    On or about August 9, 2012, Centerstate commenced a foreclosure action to

foreclose on the mortgage.

15.    As of the Petition Date, Life Changing owes Centerstate $121,031.24 plus pre-

3

petition attorney's fees and cost[1] and post-petition attorney's fees incurred pursuant to the loan documents.

16.     On October 3, 2012, Life Changing filed bankruptcy petition along with schedules. The Debtor acknowledged in Schedules A and D that the value of its real property does not exceed the total indebtedness the Debtor owes to Centerstate.

17.     Pursuant to Schedules D, E and F, the Debtor asserts that it has no other indebtedness except for monies owed to Centerstate, pursuant to above-mentioned loan.

18.     On or about October 3, 2012, the Debtor filed its Chapter 11 Case Management Summary. Pursuant to the filed document, Debtor does not have any payroll obligations.

19.     Based on the Debtor's schedules, Centerstate will likely have a partially secured claim, with a deficiency that will dwarf the claims of unsecured creditors, if any, for purpose of voting.

20.     Based on the information contained in the bankruptcy schedules filed by Debtor, Centerstate is the only secured creditor in this case.

## Memorandum of Law

**I.     Dismissal of the Debtor's Chapter 11 Case is Proper Pursuant to 11 U.S.C. § 1112(b) and Governing Eleventh Circuit Precedent.**

21.     This Chapter 11 case was commenced for what appears to be no reason other than forestalling the foreclosure proceedings in the State Court action. This case is, without question, a two-party dispute. The Debtor has thrust itself into bankruptcy with no prospect of reorganization. Such a course of action is not the purpose Congress intended when it drafted the

---

[1].     Pre-petition attorney's fees and foreclosure cost is approximately $3,148.00.

rules and the sections of the Code that apply to all Chapter 11 cases. As Centerstate will further demonstrate below, there are ample grounds for this Court to dismiss this case, or, alternatively, to grant Centerstate relief from the automatic stay to pursue its state court rights and remedies.

22.     11 U.S.C. § 112(b) provides that a case may be dismissed for "cause." 11 U.S.C. § 1112(b). The Eleventh Circuit Court of Appeals has long held that a debtor's lack of good faith in commencing a Chapter 11 case constitutes the requisite cause for its dismissal pursuant to Section 1112(b). See *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984) (affirming dismissal of Chapter 11 case commenced to shield single asset real estate from foreclosure proceedings).[2]

23.     Although there is no particular test for determining whether a debtor has filed a petition in bad faith, courts may consider factors that evidence "intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, factors that evidence the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *Phoenix Piccadilly, Ltd. v. Life Ins. Co. Of Va.* (In re *Phoenix Piccadilly, Ltd)*, 849 F.2d 1393, 1394 (11th Cir. 1988) (affirming dismissal of Chapter 11 case filed by owner of apartment complex that was subject to foreclosure action filed by secured creditors prior to bankruptcy filing); see also *State St. Houses, Inc. v. New York State Urban Dev. Corp.* (*In re State St. Houses, Inc.*), 356 F.3d 1345, 1346-47 (11th Cir. 2004) (same).

---

[2].     Courts in other circuits have often used lack of good faith as "cause" for relief under Section 1112(b) as well as pursuant to Section 362(d)(1). See e.g., *Trident Assocs. Ltd. P'ship v. Metropolitan Life Inc. Co. (In re Trident Assocs. Ltr P'ship*), 52 F.3d 127, 130-31 (6th Cir. 1995).

24.     In *Phoenix Piccadilly*, the Eleventh Circuit identified the following circumstantial factors to be relevant in determining whether a Chapter 11 case should be dismissed as a bad faith filing:

(i)     the debtor has only one asset, the property at issue;

(ii)    the debtor has few unsecured creditors whose claims are relatively small compared to the claims of secured creditors;

(iii)   the debtor has few employees;

(iv)    the property is the subject of a foreclosure action as a result of arrearages of the debt;

(v)     the debtor's financial problems essentially are a dispute between the debtor and the secured creditor which can be resolved in the pending state court action; and

(vi)    the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

849 F.2d at 1394-95.

25.     Here, all of the factors identified by the Eleventh Circuit in *Phoenix Piccadilly* are present and weigh heavily in favor of dismissing the Debtor's Chapter 11 case..

26.     First, Centerstate holds a first priority, perfected security interest in the Debtor's Property described above, which is the Debtor's only significant asset.

27.     Second, as disclosed in the Debtor's Bankruptcy Schedules, there are no other creditors in this case.

6

28.     Third, the Case Management Summary states that the Debtor does not have any employees.

29.     Fourth, Centerstate commenced the State Court action as a result of Debtor's default under the operative loan documents and terms of the mortgage modification prior to the commencement of the case. The Debtor's financial problems are a dispute between it and Centerstate that should be resolved in the State Court.

30.     Taken together or independently, each of the factors outlined above strongly suggests that the Debtor's Chapter 11 filing was commenced with the intent to delay or frustrate the legitimate efforts of Centerstate to enforce its rights as a secured creditor.

31.     Based on the foregoing, Centerstate respectfully submits that the entry of an Order dismissing the Debtor's Chapter 11 case as a bad faith filing is proper pursuant to section 1112(b) of the Code and the standard espoused by this Circuit in Phoenix Piccadily.

32.     In addition to being subject to dismissal for bad faith as set forth above, a court can properly dismiss a debtor's Chapter 11 case for its inability to satisfy the good faith requirement under 11 U.S.C. § 1129(a)(3) or the feasibility requirement under 11 U.S.C. §1129(a)(11).

33.     Indeed, there is no indication that the Debtor is capable of proposing a plan that would be agreeable to Centerstate. The Debtor will not be able to confirm a plan over Centerstate's objection, especially since the Debtor's cash flow position is minimal, the Debtor is not generating sufficient income from operating it business, and the Debtor will not be able to cram down Centerstate pursuant to §1129(b)[3]. The Debtor has not and cannot in good faith make

---

[3].     As discussed above, Centerstate will likely have a partially unsecured claim that will completely control the voting of the claims of general unsecured creditors (if any exist other than that of Centerstate). Given that the Debtor asserts it has no

7

any representation to the contrary.  See *In re Berkshire Manor Apartments, Ltd.*, 104 B.R. 417,

420 (Bankr. N.D. Fla 1989) (since "[t]he Debtor's monthly operating reports show there is not

sufficient income to pay operating expenses, debt service, taxes, and the substantial coasts of

deferred maintenance needed.," the court found there was no realistic possibility of [a] successful

reorganization").

34.     As set forth by the Seventh Circuit in *Matter of Woodbrook Associates*:

> A Chapter 11 case can be dismissed at any time.  Creditors need not wait
> until a debtor proposes a plan or until the debtor's exclusive right to file a
> plan has expired....Creditors, likewise, need not incur the added time and
> expense of a confirmation hearing on a plan they believe cannot be
> effectuated..... The very purpose of § 1112(b) is to cut short this plan and
> confirmation process where it is pointless.

19 F. 3d 312, 317 (7th Cir. 1994) (internal citations omitted).

35.     The Debtor is not capable of presenting a confirmable plan of reorganization to this

Court. For all of the reasons set forth above, including the Debtor's bad faith in seeking to delay

and frustrate Centerstate's legitimate effort to enforce its rights in the State Court Action, ample

cause exists to dismiss this Chapter 11 case.

---

unsecured creditors, any Plan appears to be unconfirmable as a matter of law
because there will be no impaired accepting class.  Centerstates's claim for the
deficiency will completely control the voting of the class of general unsecured
creditors.  Thus, the Plan would not satisfy Sections 1129(a)(8) and 1129(a)(10)
of the Code.

## II.   ALTERNATIVELY, CAUSE EXISTS TO GRANT CENTERSTATE FULL RELIEF FROM THE AUTOMATIC STAY.

36.     11 U.S.C. § 362(d)(1) provides that stay relief should be granted "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). The courts have interpreted the language of Section 362(d)(1) to include a wide range of circumstances constituting "cause" for stay relief. *In re Bryan Road, LLC*, 382 B.R. 844, 854-855 (Bankr. S.D. Fla. 2008) (citing Barclays-Am./Business Credit, Inc. V. Radio WBHP, Inc. (*In re Dixie Broadcasting, Inc.*), 871 F.2d 1023, 1026 (11th Cir. 1989)); *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 346 (4th Cir. 1992) (concluding cause exists where lifting the stay will promote judicial economy). Whether cause exists to grant stay relief is left to the discretion of the court on case by case basis. *Bryan Road, LLC*, 382 B.R. at 854. The court looks to the totality of the circumstances in each particular case when making this determination. Id. (citing *In re Aloisi*, 261 B.R.504, 508 (Bankr. M.D.Fla. 2001)); *Wilson v. Baldino (In re Wilson)*, 116 F.3d 87, 90 (3rd Cir. 1997); see *In re Emerald Cove Villas, LLC*, 2007 WL 757663, at *2-3 (Bankr. M.D.Fla Mar. 2, 2007)).[4]   The "decision to lift the stay is discretionary with the bankruptcy judge, and may be reversed only upon a showing of abuse of discretion." *Dixie Broad*, 871 F.2d at 1026.

---

[4]     A debtor's lack of good faith in filling a petition also constitutes "cause" for lifting the automatic stay pursuant to Section 362(d)(1) of the Code. See Section 1, supra; see e.g. Barclays, 871 F.2d at 1026. To the extent this Court is not inclined to dismiss the Debtor's Chapter 11 case, this Court should grant Centerstate relief from the automatic stay due to the Debtor's bad faith filing or the formal consent to such relief provided by the Debtor in the Forbearance Agreement as to the collateral.

A.    **The Debtor Does Not Have Any Equity in the Property and It I Not Necessary For An Effective Reorganization**.

37.    As a general rule, "two factors must [usually] be satisfied to continue the automatic stay as a bar to foreclosure on a debtor's property." *Pegasus Agency, Inc. v. Grammatkakis (In re Pegasus Agency, Inc.)*, 101 F.3d 882, 886 (2d Cir. 1996). First, "the debtor must have residual equity in the property." Id. Second, "the debtor must show that the property at issue is necessary to an effective reorganization." Id.; see also *Wagner v. Branch Banking & Trust Co. (In re Hickory Ridge, LLC)*, 2010 WL 2816670, at *2-3 (N.D.W.V. July 15, 2010)(court granted relief from the automatic stay because the creditor "ha[d] not been paid for over two years.....; had to advance funds to pay.....delinquent property taxes.....; and.....suffered the marketing of the properties by [the trustee] for about two years").

38.    In *In re Chandler & Chandler Motor Inns, Inc*., 93 B.R. 755, 756 (Bankr. N.D. Fla. 1988), the court stated:

> [o]nce the movant under §362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral at issue is 'necessary for an effective reorganization.' See § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect (emphasis in original).

39.    Here, the Debtor asserts it does not have any equity in its Property listed above, which serves as collateral pursuant to the applicable loan documents. Furthermore, there is also no dispute that the Debtor is in default of the obligations it owes to Centerstate. Likewise, the Debtor's Property is not essential for an effective reorganization of the Debtor, especially since there is no equity in its Property and the Debtor's minimal cash flow position will not be

10

sufficient to propose a commercially reasonable and feasible plan. As a result, this Court should grant Centerstate relief from the automatic stay so that it may continue and complete the pending State Court Action.

WHEREFORE, **CENTERSTATE OF FLORIDA, N.A.**, respectfully requests this Honorable Court to enter an Order dismissing this Chapter 11 case, or, alternatively, granting Centerstate relief from, and terminating, the automatic stay as it applies to Centerstate, waiving the time requirements under Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure, so that Centerstate may continue its state court foreclosure proceedings through sale, certificate of title, and possession, and have the state court enter all necessary orders, judgments, and decrees associated therewith, together with such other relief that this Honorable Court may deem just and proper.

**DATED**:        This __5__ day of February 2013.

_____

**REHAN N. KHAWAJA, ESQUIRE**
Florida Bar No.: 0064025
Bankruptcy Law Offices of Rehan N. Khawaja
817 North Main Street
Jacksonville, Florida 32202-3094
Telephone:     (904) 355-8055
Facsimile:     (904) 355-8058
E-Mail:        khawaja@fla-bankruptcy.com

Attorney for Centerstate Bank of Florida, N.A.

11

EXHIBIT "A"

NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initial |
|---|---|---|---|---|---|---|---|
| $83,750.00 | 04-17-2001 | 04-17-2005 | 2490 | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

| Borrower: | Life Changing Ministries, Incorporated<br>P O Box 4152<br>Ocala, FL 34478 | Lender: | Independent National Bank<br>Main Office<br>P.O. Box 2900<br>69 SW 17th Street<br>Ocala, FL 34478-2900 |
|---|---|---|---|

**Principal Amount: $83,750.00**        **Interest Rate: 10.000%**        Date of Note: April 17, 20

PROMISE TO PAY. Life Changing Ministries, Incorporated ("Borrower") promises to pay to Independent National Bank ("Lender"), or ord in lawful money of the United States of America; the principal amount of Eighty Three Thousand Seven Hundred Fifty & 00/100 Dolla ($83,750.00), together with interest at the rate of 10.000% per annum on the unpaid principal balance from April 17, 2001, until paid in full.

PAYMENT. Borrower will pay this loan on demand. Payment in full is due immediately upon Lender's demand. If no demand is mar Borrower will pay this loan in 59 regular payments of $907.19 each and one irregular last payment estimated at $69,180.13. Borrower's fi payment is due May 17, 2001, and all subsequent payments are due on the same day of each month after that. Borrower's final payment v be due on April 17, 2005, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unle otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaini amount to any unpaid collection costs and late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actu number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lenc may designate in writing.

PREPAYMENT. Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subj to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  Except for the foregoing, Borrow may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relie Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balar due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower · remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or oth payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Independent National Bank, Main Office, P.O. Box 2900, 60 S 17th Street, Ocala, FL 34478-2900.

LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled paymen'

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable la increase the interest rate on this Note to 18.000% per annum, if and to the extent that the increase does not cause the interest rate to exceed t maximum rate permitted by applicable law.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default. Borrower fails to make any payment when due under this Note.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement betwe Lender and Borrower.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Nc or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleadi at any time thereafter.

Insolvency. The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiv for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of a proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self–he repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. Th includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceedi and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for t creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor di or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In t event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligatio arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

Change In Ownership. Any change in ownership of twenty–five percent (25%) or more of the common stock of Borrower.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment performance of this Note is impaired.

Insecurity. Lender in good faith believes itself insecure.

Cure Provisions. If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the san provision of this Note within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if Borrower, aft receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires mo than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereaft continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediate due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lend the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lende legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including effor to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, addition to all other sums provided by law.

JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by eith Lender or Borrower against the other.

GOVERNING LAW. This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Florid This Note has been accepted by Lender in the State of Florida.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check preauthorized charge with which Borrower pays is later dishonored.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whethe checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open i the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrow authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such account and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in th paragraph.

COLLATERAL. Borrower acknowledges this Note is secured by a Mortgage dated April 17, 2001, to Lender on real property located in Marion Count State of Florida, all the terms and conditions of which are hereby incorporated and made a part of this Note; and an Assignment of All-Rents to Lend on real property located in Marion County, State of Florida, all the terms and conditions of which are hereby incorporated and made a part of this Note

PROMIS      NOTE
(Con.   .d)                                            Page

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successor and assigns, and shall inure to the benefit of Lender and its successors and assigns.

GENERAL PROVISIONS. This Note and is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclud Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collective referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or even (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted t charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anythin stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded t Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person wh signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon an change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guaranto accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for an length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collatera and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modif this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joi and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES T( THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

LIFE CHANGING MINISTRIES, INCORPORATED

By: _____
John E. Morand, Director of Life Changing
Ministries, Incorporated

By: _____
Trina M. Morand, Director of Life Changing
Ministries, Incorporated

---

Florida Documentary Tax

Florida documentary tax in the amount required by law has been paid with respect to this Note, and proper stamps have been affixed to a Mortgage and a Assignment of Rents securing this Note.

LASER PRO Lending, Reg. U.S. Pat. & T.M. Off., Ver. 5.19.10.04 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved.  - FL  s:\CFI\LPL\D09.FC  TR-2137  PR-COEQ

# CORPORATE RESOLUTION TO BORROW / GRANT COLLATERAL

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $83,750.00 | 04-17-2001 | 04-17-2006 | 2490 | | | *** | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Corporation:** Life Changing Ministries, Incorporated
P O Box 4162
Ocala, FL 34478

**Lender:** Independent National Bank
Main Office
P.O. Box 2900
60 SW 17th Street
Ocala, FL 34478-2900

WE, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:

**THE CORPORATION'S EXISTENCE.** The complete and correct name of the Corporation is Life Changing Ministries, Incorporated ("Corporation"). The Corporation is a non-profit corporation which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Florida. The Corporation is duly authorized to transact business in all other states in which the Corporation is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which the Corporation is doing business. Specifically, the Corporation is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. The Corporation has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. The Corporation maintains an office at P O Box 4162, Ocala, FL 34478. Unless the Corporation has designated otherwise in writing, the principle office is the office at which the Corporation keeps its books and records. The Corporation will notify Lender of any change in the location of the Corporation's principle office. The Corporation shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to the Corporation and the Corporation's business activities.

**RESOLUTIONS ADOPTED.** At a meeting of the Directors of the Corporation, or if the Corporation is a close corporation having no Board of Directors then at a meeting of the Corporation's shareholders, duly called and held on 4-17-2001, at which a quorum was present and voting, or by other duly authorized action in lieu of a meeting, the resolutions set forth in this Resolution were adopted.

**OFFICERS.** The following named persons are officers of Life Changing Ministries, Incorporated :

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|---|---|---|---|
| John E. Morand | Director | Y | X [signature] |
| Trina M. Morand | Director | Y | X [signature] |

**ACTIONS AUTHORIZED.** Any two (2) of the authorized persons listed above may enter into any agreements of any nature with Lender, and those agreements will bind the Corporation. Specifically, but without limitation, any two (2) of such authorized persons are authorized, empowered, and directed to do the following for and on behalf of the Corporation:

**Borrow Money.** To borrow, as a cosigner or otherwise, from time to time from Lender, on such terms as may be agreed upon between the Corporation and Lender, such sum or sums of money as in their judgment should be borrowed, without limitation.

**Execute Notes.** To execute and deliver to Lender the promissory note or notes, or other evidence of the Corporation's credit accommodations, on Lender's forms, at such rates of interest and on such terms as may be agreed upon, evidencing the sums of money so borrowed or any of the Corporation's indebtedness to Lender, and also to execute and deliver to Lender one or more renewals, extensions, modifications, refinancings, consolidations, or substitutions for one or more of the notes, any portion of the notes, or any other evidence of credit accommodations.

**Grant Security.** To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender any property now or hereafter belonging to the Corporation or in which the Corporation now or hereafter may have an interest, including without limitation all real property and all personal property (tangible or intangible) of the Corporation, as security for the payment of any loans or credit accommodations so obtained, any promissory notes so executed (including any amendments to or modifications, renewals, and extensions of such promissory notes), or any other or further indebtedness of the Corporation to Lender at any time owing, however the same may be evidenced. Such property may be mortgaged, pledged, transferred, endorsed, hypothecated or encumbered at the time such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated or encumbered.

**Execute Security Documents.** To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances. Notwithstanding the foregoing, any one of the above authorized persons may execute, deliver, or record financing statements.

**Negotiate Items.** To draw, endorse, and discount with Lender all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to the Corporation or in which the Corporation may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to the Corporation's account with Lender, or to cause such other disposition of the proceeds derived therefrom as they may deem advisable.

**Further Acts.** In the case of lines of credit, to designate additional or alternate individuals as being authorized to request advances under such lines, and in all cases, to do and perform such other acts and things, to pay any and all fees and costs, and to execute and deliver such other documents and agreements, including agreements waiving the right to a trial by jury, as the officers may in their discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Resolution.

**ASSUMED BUSINESS NAMES.** The Corporation has filed or recorded all documents or filings required by law relating to all assumed business names used by the Corporation. Excluding the name of the Corporation, the following is a complete list of all assumed business names under which the Corporation does business: None.

***NOTICES TO LENDER.*** The Corporation will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Corporation's name; (B) change in the Corporation's assumed business name(s); (C) change in the management of the corporation; (D) change in the authorized signer(s); (E) change in the Corporation's principal office address; (F) conversion of the Corporation to a new or different type of business entity; or (G) change in any other aspect of the Corporation that directly or

indirectly relates to any agreements between the Corporation and Lender. No change in the Corporation's name will take effect until after Lender has been notified.

CERTIFICATION CONCERNING OFFICERS AND RESOLUTIONS. The officers named above are duly elected, appointed, or employed by or for the Corporation, as the case may be, and occupy the positions set opposite their respective names. This Resolution now stands of record on the books of the Corporation, is in full force and effect, and has not been modified or revoked in any manner whatsoever.

NO CORPORATE SEAL. The Corporation has no corporate seal, and therefore, no seal is affixed to this Resolution.

CONTINUING VALIDITY. Any and all acts authorized pursuant to this Resolution and performed prior to the passage of this Resolution are hereby ratified and approved. This Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of the Corporation's agreements or commitments in effect at the time notice is given.

IN TESTIMONY WHEREOF, We have hereunto set our hand and attest that the signatures set opposite the names listed above are their genuine signatures.

We each have read all the provisions of this Resolution, and we each personally and on behalf of the Corporation certify that all statements and representations made in this Resolution are true and correct. This Corporate Resolution to Borrow / Grant Collateral is dated ___4-17-2___

CERTIFIED TO AND ATTESTED BY:

X _____
John E. Morand, Director

X _____
Trina M. Morand, Director

X _____
Jackie Williams, Secretary

NOTE: If the officers signing this Resolution are designated by the foregoing document as one of the officers authorized to act on the Corporation's behalf, it is advisable to have this Resolution signed by at least one non-authorized officer of the Corporation.

LASER PRO Lending, Ver. 5.13.00.04 Copr. Harland Financial Solutions, Inc. 1997, 2001. All Rights Reserved. - FL c:\CFI\LPL\C10.FC TR-2137 PR-CSCG

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $95,000.00 | 04-17-2006 | 04-17-2011 | CM 2490 | | | *** | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:  Life Changing Ministries, Inc. (TIN: 59-3613505)
837 N.W. 22nd St.
Ocala, FL 34475

Lender:  Independent National Bank
Main Office
P.O. Box 2900
60 SW 17th Street
Ocala, FL 34478-2900

---

**Principal Amount: $95,000.00**          **Interest Rate: 10.000%**          **Date of Note: April 17, 2006**

PROMISE TO PAY. Life Changing Ministries, Inc. ("Borrower") promises to pay to Independent National Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Ninety-five Thousand & 00/100 Dollars ($95,000.00), together with interest at the rate of 10.000% per annum on the unpaid principal balance from April 17, 2006, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

PAYMENT. Borrower will pay this loan in 59 regular payments of $1,029.50 each and one irregular last payment estimated at $78,442.98. Borrower's first payment is due May 17, 2006, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on April 17, 2011, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

PREPAYMENT. Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Independent National Bank, Main Office, P.O. Box 2900, 60 SW 17th Street, Ocala, FL 34478-2900.

LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default. Borrower fails to make any payment when due under this Note.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Insolvency. The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

Change In Ownership. Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Insecurity. Lender in good faith believes itself insecure.

Cure Provisions. If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

ENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Florida.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

COLLATERAL. Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: a Mortgage or Deed of Trust to a trustee in favor of Lender on real property located in Marion County, State of Florida.

DOCUMENTARY STAMPS. This note is a renewal of an existing note balance of $68,462.07, upon which documentary stamp taxes have been paid. A new advance of $26,537.93 is being made as a part of this promissory note, and documentary stamp taxes are being paid herewith on the new advance amount.

COLLATERAL. Borrower acknowledges this Note is secured by a Mortgage and Assignment of Rents, dated April 17, 2001 and recorded April 19, 2001 in O.R. Book 02939, Page 1774 and a Modification of Mortgage dated April 17, 2006.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES. Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Independent National Bank P.O. Box 2900 Ocala, FL 34478.

GENERAL PROVISIONS. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Florida (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

LIFE CHANGING MINISTRIES, INC.

By: _____
John E. Morand, Director of Life Changing
Ministries, Inc.

By: _____
Trina M. Morand, Director of Life Changing
Ministries, Inc.

## Florida Documentary Stamp Tax

Florida documentary stamp tax in the amount required by law has been paid with respect to this Note on the Modification of Mortgage securing this Note.

LASER PRO Lending, Ver. 5.31.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - FL  c:\CFI\LPL\D20.FC  TR-7143  PR-CSEC

| Principal | Loan Date | ~~Maturity~~ | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $95,000.00 | 04-17-2006 | 04-17-2011 | CM 2490 | | | *** | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Corporation:** Life Changing Ministries, Inc. (TIN: 59-3613505)
837 N.W. 22nd St.
Ocala, FL 34475

**Lender:** Independent National Bank
Main Office
P.O. Box 2900
60 SW 17th Street
Ocala, FL 34478-2900

## WE, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:

**THE CORPORATION'S EXISTENCE.** The complete and correct name of the Corporation is Life Changing Ministries, Inc. ("Corporation"). The Corporation is a non-profit corporation which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Florida. The Corporation is duly authorized to transact business in all other states in which the Corporation is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which the Corporation is doing business. Specifically, the Corporation is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. The Corporation has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. The Corporation maintains an office at 837 N.W. 22nd St., Ocala, FL 34475. Unless the Corporation has designated otherwise in writing, the principal office is the office at which the Corporation keeps its books and records. The Corporation will notify Lender prior to any change in the location of The Corporation's state of organization or any change in The Corporation's name. The Corporation shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to the Corporation and The Corporation's business activities.

**RESOLUTIONS ADOPTED.** At a meeting of the Directors of the Corporation, or if the Corporation is a close corporation having no Board of Directors then at a meeting of the Corporation's shareholders, duly called and held **on April 17, 2006,** at which a quorum was present and voting, or by other duly authorized action in lieu of a meeting, the resolutions set forth in this Resolution were adopted.

**OFFICERS.** The following named persons are officers of Life Changing Ministries, Inc.:

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|-------|--------|------------|-------------------|
| John E. Morand | Director | Y | X _John E. Morand_ |
| Trina M. Morand | Director | Y | X _Trina M. Morand_ |

**ACTIONS AUTHORIZED.** Any one (1) of the authorized persons listed above may enter into any agreements of any nature with Lender, and those agreements will bind the Corporation. Specifically, but without limitation, any one (1) of such authorized persons are authorized, empowered, and directed to do the following for and on behalf of the Corporation:

**Borrow Money.** To borrow, as a cosigner or otherwise, from time to time from Lender, on such terms as may be agreed upon between the Corporation and Lender, such sum or sums of money as in their judgment should be borrowed, without limitation.

**Execute Notes.** To execute and deliver to Lender the promissory note or notes, or other evidence of the Corporation's credit accommodations, on Lender's forms, at such rates of interest and on such terms as may be agreed upon, evidencing the sums of money so borrowed or any of the Corporation's indebtedness to Lender, and also to execute and deliver to Lender one or more renewals, extensions, modifications, refinancings, consolidations, or substitutions for one or more of the notes, any portion of the notes, or any other evidence of credit accommodations.

**Grant Security.** To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender any property now or hereafter belonging to the Corporation or in which the Corporation now or hereafter may have an interest, including without limitation all of the Corporation's real property and all of the Corporation's personal property (tangible or intangible), as security for the payment of any loans or credit accommodations so obtained, any promissory notes so executed (including any amendments to or modifications, renewals, and extensions of such promissory notes), or any other or further indebtedness of the Corporation to Lender at any time owing, however the same may be evidenced. Such property may be mortgaged, pledged, transferred, endorsed, hypothecated or encumbered at the time such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated or encumbered.

**Execute Security Documents.** To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances. Notwithstanding the foregoing, any one of the above authorized persons may execute, deliver, or record financing statements.

**Negotiate Items.** To draw, endorse, and discount with Lender all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to the Corporation or in which the Corporation may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to the Corporation's account with Lender, or to cause such other disposition of the proceeds derived therefrom as they may deem advisable.

**Further Acts.** In the case of lines of credit, to designate additional or alternate individuals as being authorized to request advances under such lines, and in all cases, to do and perform such other acts and things, to pay any and all fees and costs, and to execute and deliver such other documents and agreements, including agreements waiving the right to a trial by jury, as the officers may in their discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Resolution.

**ASSUMED BUSINESS NAMES.** The Corporation has filed or recorded all documents or filings required by law relating to all assumed business names used by the Corporation. Excluding the name of the Corporation, the following is a complete list of all assumed business names under which the Corporation does business: None.

**NOTICES TO LENDER.** The Corporation will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Corporation's name; (B) change in the Corporation's assumed business name(s); (C) change in the management of the Corporation; (D) change in the authorized signer(s); (E) change in the Corporation's principal office address; (F)

change in the Corporation's state of organization; (G) conversion of the Corporation to a new or different type of business entity; or (H) change in any other aspect of the Corporation that directly or indirectly relates to any agreements between the Corporation and Lender. No change in the Corporation's name or state of organization will take effect until after Lender has received notice.

**CERTIFICATION CONCERNING OFFICERS AND RESOLUTIONS.** The officers named above are duly elected, appointed, or employed by or for the Corporation, as the case may be, and occupy the positions set opposite their respective names. This Resolution now stands of record on the books of the Corporation, is in full force and effect, and has not been modified or revoked in any manner whatsoever.

**NO CORPORATE SEAL.** The Corporation has no corporate seal, and therefore, no seal is affixed to this Resolution.

**CONTINUING VALIDITY.** Any and all acts authorized pursuant to this Resolution and performed prior to the passage of this Resolution are hereby ratified and approved. This Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of the Corporation's agreements or commitments in effect at the time notice is given.

**IN TESTIMONY WHEREOF,** we have hereunto set our hand and attest that the signatures set opposite the names listed above are their genuine signatures.

We each have read all the provisions of this Resolution, and we each personally and on behalf of the Corporation certify that all statements and representations made in this Resolution are true and correct. This Corporate Resolution to Borrow / Grant Collateral is dated April 17, 2006.

CERTIFIED TO AND ATTESTED BY:

X _____
John E. Morand, Director of Life Changing Ministries, Inc.

X _____
Trina M. Morand, Director of Life Changing Ministries, Inc.

NOTE: If the officers signing this Resolution are designated by the foregoing document as one of the officers authorized to act on the Corporation's behalf, it is advisable to have this Resolution signed by at least one non-authorized officer of the Corporation.

LASER PRO Lending, Ver. 5.31.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved. - FL c\CFI\LPL\C10.FC TR-7143 PR-CSEC

EXHIBIT "B"

RECORDATION REQUESTED BY:
  Independent National Bank
  Main Office        All American Land
  P.O. Box 2900      Amo102008
  60 SW 17th Street
  Ocala, FL  34478-2900

WHEN RECORDED MAIL TO:
  Independent National Bank
  Main Office
  P.O. Box 2900
  60 SW 17th Street
  Ocala, FL  34478-2900

SEND TAX NOTICES TO:
  Independent National Bank
  Main Office
  P.O. Box 2900
  60 SW 17th Street
  Ocala, FL  34478-2900

This Mortgage prepared by:

  Name: Lois E. Ellis, Sr. Loan Operations Assistant
  Company: Independent National Bank
  Address: P O Box 2900, Ocala, FL 34478

DAVID R. ELLSPERMANN, CLERK OF COURT  MARION COUNTY
DATE: 04/19/2001 07:11:09 AM
FILE NUM 2001037820    OR BK/PG 02939/1774
RECORDING FEES 29.50
MORT DOC TAX 293.30
INTANG TAX 167.50

## MORTGAGE

THIS MORTGAGE dated April 17, 2001, is made and executed between Life Changing Ministries, Incorporated, whose address is P O Box 4162, Ocala, FL  34478 (referred to below as "Grantor") and Independent National Bank, whose address is Main Office, P.O. Box 2900, 60 SW 17th Street, Ocala, FL 34478-2900 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Marion County, State of Florida:

Commencing 830.95 feet West of the Northeast corner of the Southeast 1/4 of the Southwest 1/4 of Section 6, Township 15 South, Range 22 East; thence South 636.20 feet to the North line of a graded road; thence West along said line of graded road 166.21 feet; thence North 636.35 feet; thence East 166.21 feet to the Point of Beginning.

The Real Property or its address is commonly known as 837 NW 22nd Street, Ocala, FL  34475.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE.  Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

POSSESSION AND MAINTENANCE OF THE PROPERTY.  Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use.  Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain.  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws.  Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances.  Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor.  The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Nuisance, Waste.  Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

Removal of Improvements.  Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

Composite

Exhibit  A

## MORTGAGE
### (Continued)

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Subsequent Liens.** Grantor shall not allow any subsequent liens or mortgages on all or any portion of the Property without the prior written consent of Lender.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon nor leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Mortgage at any trustee's sale or other sale held under the provisions of this Mortgage, or at any foreclosure sale of such Property.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the

FILE: 2001037620
OR BOOK/PAGE 02938/1776

## MORTGAGE
### (Continued)

Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all intangible personal property taxes, documentary stamp taxes, fees, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax, including without limitation an intangible personal property tax, upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures or other personal property, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall assemble the Personal Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

## MORTGAGE
## (Continued)

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage, the Note, or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If such a failure is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured (and no Event of Default will have occurred) if Grantor, after Lender sends written notice demanding cure of such failure: (a) cures the failure within ten (10) days; or (b) if the cure requires more than ten (10) days, immediately initiates steps sufficient to cure the failure and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender personally, or by Lender's agents or attorneys, may enter into and upon all or any part of the Property, and may exclude Grantor, Grantor's agents and servants wholly from the Property. Lender may use, operate, manage and control the Property, Lender shall be entitled to collect and receive all earnings, revenues, rents, issues, profits and income of the Property and every part thereof, all of which shall for all purposes constitute property of Grantor. After deducting the expenses of conducting the business thereof, and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and prior or other property charges upon the Property or any part thereof, as well as just and reasonable compensation for the services of Lender. Lender shall apply such monies first to the payment of the principal of the Note, and the interest thereon, when and as the same shall become payable and second to the payment of any other sums required to be paid by Grantor under this Mortgage.

**Appoint Receiver.** In the event of a suit being instituted to foreclose this Mortgage, Lender shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of any or all of the Property, and of all rents, incomes, profits, issues and revenues thereof, from whatsoever source. The parties agree that the court shall forthwith appoint such receiver with the usual powers and duties of receivers in like cases. Such appointment shall be made by the court as a matter of strict right to Lender and without notice to Grantor, and without reference to the adequacy or inadequacy of the value of the Property, or to Grantor's solvency or any other party defendant to such suit. Grantor hereby specifically waives the right to object to the appointment of a receiver and agrees that such appointment shall be made as an admitted equity and as a matter of absolute right to Lender, and consents to the appointment of any officer or employee of Lender as receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect

FILE: 2001037620
OR BOOK/PAGE 02939/1778

## MORTGAGE
## (Continued)

Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by, construed and enforced in accordance with federal law and the laws of the State of Florida. This Mortgage has been accepted by Lender in the State of Florida.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time Is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Life Changing Ministries, Incorporated    , and all other persons and entities signing the Note in whatever capacity.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Life Changing Ministries, Incorporated   .

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

FILE. 2001037620
OR BOOK/PAGE 02939/1779

## MORTGAGE
(Continued)

Page 6

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means Independent National Bank, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated April 17, 2001, in the original principal amount of $83,750.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The final maturity date of the Note is April 17, 2006.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

LIFE CHANGING MINISTRIES, INCORPORATED

By: _____
John E. Morand, Director of Life Changing Ministries, Incorporated

By: _____
Trina M. Morand, Director of Life Changing Ministries, Incorporated

WITNESSES:

X _____
PHILIP HENRY COLVER

X _____
CATHY ROBINSON

## CORPORATE ACKNOWLEDGMENT

STATE OF ___FL___              )
                                ) SS
COUNTY OF ___Marion___          )

The foregoing instrument was acknowledged before me this ___17th___ day of ___April___, 20 01
by John E. Morand, Director of Life Changing Ministries, Incorporated   ; Trina M. Morand, Director of Life Changing Ministries, Incorporated  , a Florida corporation, on behalf of the corporation. They are personally known to me or have produced ___Dr. license___ as identification and did (did not) take an oath.

_____
(Signature of Person Taking Acknowledgment)

_____
(Name of Acknowledger Typed, Printed or Stamped)

_____
(Title or Rank)

_____
(Serial Number, if any)

DEBORAL PHILLIPS
MY COMMISSION # CC 883754
EXPIRES October 25, 2003
Bonded Thru Notary Public Underwriters

LASER PRO Lending, Reg. U.S. Pat. & T.M. Off., Ver. 3.15.00.04 (c) Concentrex 1997, 2001. All Rights Reserved. - FL L\CFI\WIN\CFI\LPL\G03.FC TR-1197 PN-C52CI

EXHIBIT "C"

RECORDATION REQUESTED BY:
Independent National Bank
Main Office
P.O. Box 2900
50 SW 17th Street
Ocala, FL 34478-2900

DAVID R. ELLSPERMANN, CLERK OF COURT   MARION COUNTY
DATE: 05/04/2006  11:25:49 AM
FILE #: 2006073041  OR BK 04427 PGS 0721-0723

RECORDING FEES 27.00

WHEN RECORDED MAIL TO:
Independent National Bank
Main Office
P.O. Box 2900
60 SW 17th Street
Ocala, FL 34478-2900

MORT DOC TAX 93.10

INTANG TAX 53.08

SEND TAX NOTICES TO:
Life Changing Ministries, Inc.
837 N.W. 22nd St.
Ocala, FL 34475

This Modification of Mortgage prepared by:

Name:  Gail Prechodko, Loan Assistant
Company: Independent National Bank
Address: P.O. Box 2900, Ocala, FL 34478-2900

## MODIFICATION OF MORTGAGE

THIS MODIFICATION OF MORTGAGE dated April 17, 2006, is made and executed between Life Changing Ministries, Inc., a Florida not-for-profit corporation, whose address is 837 N.W. 22nd St., Ocala, FL 34475 (referred to below as "Grantor") and Independent National Bank, whose address is P.O. Box 2900, 60 SW 17th Street, Ocala, FL 34478-2900 (referred to below as "Lender").

MORTGAGE. Lender and Grantor have entered into a Mortgage dated April 17, 2001 (the "Mortgage") which has been recorded in Marion County, State of Florida, as follows:

April 19, 2001 In O.R. Book 02939, Page 1774.

REAL PROPERTY DESCRIPTION. The Mortgage covers the following described real property located in Marion County, State of Florida:

Commencing 830.95 feet West of the Northeast corner of the Southeast 1/4 of the Southwest 1/4 of Section 6, Township 15 South, Range 22 East; thence South 636.20 feet to the North line of a graded road, thence West along said line of graded road 166.21 feet; thence North 636.35 feet; thence East 166.21 feet to the Point of Beginning

The Real Property or its address is commonly known as  837 N.W. 22nd St., Ocala, FL 34475. The Real Property tax identification number is 25276-000-00.

MODIFICATION. Lender and Grantor hereby modify the Mortgage as follows:

1. Supplemental Funds/Note.  Borrower has received from and promises to pay to the order of mortgagee additional funds in the amount of $26,537.93. This additional indebtedness shall be combined with and repaid together with the original loan which has a current balance of $68,462.07 for a combined indebtedness of $95,000.00.

2. Monthly Payment(s)/Interest Rate.  For payment and interest rate refer to Note of even date.

3. Principal Balance.  The principal balance of the Combined Indebtedness secured by the Mortgage as of the date hereof is $95,000.00. The current outstanding principal balance is $95,000.00. Borrower acknowledges that this debt is valid and enforceable, and is not subject to any defense, offset or counterclaim.

4. Maturity Date.  The new maturity date will be April 17, 2011.

CONTINUING VALIDITY.  Except as expressly modified above, the terms of the original Mortgage shall remain unchanged and in full force and effect and are legally valid, binding, and enforceable in accordance with their respective terms. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Mortgage as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Mortgage (the "Note"). It is the intention of Lender to retain as liable all parties to the Mortgage and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Mortgage does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it.  This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF MORTGAGE AND GRANTOR AGREES TO ITS TERMS.  THIS MODIFICATION OF MORTGAGE IS DATED APRIL 17, 2006.

GRANTOR:

LIFE CHANGING MINISTRIES, INC.

By: _____
John E. Morand, Director of Life Changing Ministries, Inc.

By: _____
Trina M. Morand, Director of Life Changing Ministries, Inc.

WITNESSES:

x _____
CHRISTIE DONALD

x _____
GAIL A. Prechodko

MODIFICATION OF MORTGAGE
(Continued)

Loan No: CM 2490                                                                Page 2

LENDER:

INDEPENDENT NATIONAL BANK

x _Christie Donald_
Authorized Signer    CHRISTIE DONALD

## CORPORATE ACKNOWLEDGMENT

STATE OF ___FL___                    )
                                     ) SS
COUNTY OF ___Marion___               )

The foregoing instrument was acknowledged before me this ___14___ day of ___APRIL___, 20 _06_
by John E. Morand, Director of Life Changing Ministries, Inc., a Florida corporation, on behalf of the corporation. He or she is personally
known to me or has produced ___FL DL. LIC___ as identification and did / did not take an oath.

_____
(Signature of Person Taking Acknowledgment)

GAIL A. PRECHODKO              _GAIL A. PRECHODKO_
Notary Public, State of Florida     (Name of Acknowledger Typed, Printed or Stamped)
My comm. exp. May 17, 2008
Comm. No. DD 320304            _____
                              (Title or Rank)

                              _____
                              (Serial Number, if any)

## CORPORATE ACKNOWLEDGMENT

STATE OF ___FL___                    )
                                     ) SS
COUNTY OF ___Marion___               )

The foregoing instrument was acknowledged before me this ___14___ day of ___April___, 20 _06_
by Trina M. Morand, Director of Life Changing Ministries, Inc., a Florida corporation, on behalf of the corporation. He or she is personally
known to me or has produced ___FL DL / LIC___ as identification and did / did not take an oath.

_____
(Signature of Person Taking Acknowledgment)

GAIL A. PRECHODKO              _GAIL A. PRECHODKO_
Notary Public, State of Florida     (Name of Acknowledger Typed, Printed or Stamped)
My comm. exp. May 17, 2008
Comm. No. DD 320304            _____
                              (Title or Rank)

                              _____
                              (Serial Number, if any)

Loan No: CM 2490

**MODIFICATION OF MORTGAGE**
**(Continued)**

Page 3

---

## LENDER ACKNOWLEDGMENT

STATE OF _____ )
                             ) SS
COUNTY OF __Marion_____ )

The foregoing instrument was acknowledged before me this ___14___ day of __April__, 20_06_
by __Christie Smith__. He or she is personally known to me or has produced
_____ as identification and did / did not take an oath.

_____
(Signature of Person Taking Acknowledgment)

GAIL A. PRECHODKO
(Name of Acknowledger Typed, Printed or Stamped)

GAIL A. PRECHODKO
Notary Public, State of Florida
My comm. exp. May 17, 2008
Comm. No. DD 320904

_____
(Title or Rank)

_____
(Serial Number, if any)

---

LASER PRO Lending, Ver. 5.31.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - FL  L:\CMLP\CD01.FC  TR-7140  PR-C88C

EXHIBIT "D"

This instrument prepared by and return to:
Daniel Hicks, Esquire
DANIEL HICKS, P.A.
421 South Pine Avenue
Ocala, Florida 34471
Florida Bar #0145139

DAVID R ELLSPERMANN CLERK OF COURT MARION COUNTY
DATE: 08/07/2012 03:41:44 PM
FILE #: 2012076670  OR BK 05716 PGS 0769-0771

REC 27.00

## RECEIVER'S ASSIGNMENT OF NOTE AND MORTGAGE

KNOWN ALL MEN BY THESE PRESENTS:

This ASSIGNMENT is entered into between the FEDERAL DEPOSIT INSURANCE CORPORATION (the "FDIC" and also referred to herein sometimes as the "Assignor" or the "Receiver"), as the receiver for Independent National Bank, whose mailing address was 60 SE 17th Street, Ocala, Florida 34471 (the "Bank"), and CenterState Bank of Florida, N.A., whose mailing address is 406 E. Silver Springs Blvd., Ocala, Florida 34471, with its main banking house being located at 1101 First Street South, Winter Haven, Florida 33880, its successors and/or assigns (collectively the "Assignee").

WHEREAS, on August 20, 2010, the Office of the Comptroller of the Currency closed Independent National Bank, and appointed the FDIC as receiver (the "Receiver") of the Bank.

WHEREAS, the Limited Power of Attorney authorizing the execution of this assignment was recorded with the Marion County Clerk of the Circuit Court on September 3, 2010, in Official Records Book 5408, page 1329, public records of Marion County, Florida; and

WHEREAS, the Receiver is the successor in interest to the right, title and interest of the Bank to the Note, Mortgage, Assignment of Rents, and other documents, if any, described herein (collectively called the "Loan Documents"); and

WHEREAS, the Assignor desires to assign to Assignee all of its right, title and interest to the Loan Documents, more particularly described in **Exhibit "A"**, and all rights to causes of actions and remedies related thereto (including, without limitation, all past, present, and future causes of action and all remedies related thereto), and the indebtedness evidenced thereby, and Assignee desires to assume the Assignor's obligations thereunder as stated in the terms and conditions of that certain Purchase and Assumption Agreement dated as of August 20, 2010, between FDIC and Assignee (the "Purchase and Assumption Agreement").

NOW, THEREFORE, in consideration of $1.00 and other goods and valuable consideration paid by Assignee to the Assignor, the receipt and sufficiency of which are hereby acknowledged, the Assignor assigns to Assignee all of the Assignor's right, title, and interest in, to, and under the Loan Documents and all rights to causes of actions and remedies related thereto (including, without limitation, all past, present, and future causes of action and all remedies related thereto), and Assignee hereby assumes the Assignor's obligations under the Loan Documents as set forth in **Exhibit "A"**, subject to the terms of the Purchase and Assumption Agreement. This assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

The validity, construction, enforcement, interpretation, and performance of this Assignment shall be governed by the laws of the United States of America, and to the extent that state law would apply under the applicable federal laws, the laws of the State of Florida.

Executed and delivered this __3__ day of __August__, 2012.

RECEIVER (ASSIGNOR):

FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER FOR
INDEPENDENT NATIONAL BANK

By: _____
George Durhan, Power of Attorney
for Federal Deposit Insurance Corporation

ASSIGNEE:

CENTERSTATE BANK OF FLORIDA, N.A.

By: _____  8/3/2012
Sara Grubbs, Assistant Vice President

STATE OF FLORIDA
COUNTY OF MARION

   Before me, the undersigned Notary Public, duly commissioned and qualified within said County and State, personally appeared George Durhan, with whom I am personally acquainted and upon oath stated he is the Limited Power of Attorney of the Federal Deposit Insurance Corporation, as Receiver for Independent National Bank, whose address was 60 SW 17th Street, Ocala, Florida 34471, as Assignor and is duly authorized in his capacity to execute the foregoing instrument for and in the name of said Receiver, and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein mentioned and set forth.

   WITNESS my hand and official seal this 3rd day of August, 2012.

> TAMARA BELLE
> Notary Public - State of Florida
> My Comm. Expires Oct 27, 2013
> Commission # DD 919876

_____
Notary Public

STATE OF FLORIDA
COUNTY OF MARION

   Before me, the undersigned Notary Public, duly commissioned and qualified within said County and State, personally appeared Sara Grubbs, with whom I am personally acquainted and upon oath stated she is the Assistant Vice President of CenterState Bank of Florida, N.A., whose branch address is 406 E. Silver Springs Boulevard, Ocala, Florida 34471, with its main banking house located at 1101 First Street South, Winter Haven, Florida 33880, as Assignee and is duly authorized in her capacity to execute the foregoing instrument for and in the name of said Assignee, and further stated and acknowledged that she had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein mentioned and set forth.

   WITNESS my hand and official seal this 3rd day of August, 2012.

> TAMARA BELLE
> Notary Public - State of Florida
> My Comm. Expires Oct 27, 2013
> Commission # DD 919876

_____
Notary Public

## EXHIBIT "A"

All right, title, and interest in, to, and under the Loan Documents originally between Independent National Bank, as Lender, and Life Changing Ministries Incorporated, as Borrower, and all rights to causes of actions and remedies related thereto (including, without limitation, all past, present, and future causes of action and all remedies related thereto), including, but not limited to the following:

Borrower:     Life Changing Ministries Incorporated, a/k/a Life Changing Ministries, Inc.
Loan #:       CM 2490

Promissory Note dated April 17, 2001 in the amount of $83,750.00.
Promissory Note dated April 17, 2006 in the amount of $95,000.00.

Mortgage dated April 17, 2001, recorded on April 19, 2001 in O.R. Book 2939, Page 1774-1779, public records of Marion County, Florida.
Modification of Mortgage dated April 17, 2006, recorded on May 5, 2006 in O.R. Book 4427, Pages 0721-0723, public records of Marion County, Florida.

And all loan documents related to the above-referenced Loan CM 2490, including, but not limited to, Guaranties, Assignment of Rents, UCC Financing Statements, Security Agreement, Policies of Title Insurance, etc.

## CERTIFICATE OF SERVICE

**I HEREBY** certify that a copy of the foregoing was furnished to all interested parties as per the attached matrix, by United States Mail or electronic mail, this ⁵ᵗʰ day of February, 2013.

**REHAN N. KHAWAJA, ESQUIRE**
Florida Bar No.: 0064025
Bankruptcy Law Offices of Rehan N. Khawaja
817 North Main Street
Jacksonville, Florida 32202
Telephone:    (904) 355-8055
Facsimile:    (904) 355-8058
E-Mail:        khawaja@fla-bankruptcy.com

Attorney for Centerstate Bank of Florida, N.A.

12

113A-3
Case 3:12-bk-06488-JAF
Middle District of Florida
Jacksonville
Tue Feb  5 13:53:02 EST 2013

837 NW 22nd Street
Ocala, FL 34475-4327

42745 US Highway 27
Davenport, FL 33837

Centerstate Bank of Florida
c/o Daniel Hicks, Esquire
421 South Pine Ave.
Ocala, FL 34471-1175

Centerstate Bank of Florida, N.A.
7722 State Road 544
Winter Haven, Florida 33881-9570

Centerstate Bank of Florida, N.A.
c/o Rehan N. Khawaja
817 North Main St.
Jax, FL  32202-3094

Daniel Hicks, P.A.
421 South Pine Avenue
Ocala, FL 34471-1175

Elaine Jackson
2912 NE 4th Court
Ocala, FL 34479-2773

Florida Dept. of Revenue
5050 West Tennessee Street
Tallahassee, FL 32399-0100

Florida Dept. of Revenue
Bankruptcy Unit
P.O. Box 6668
Tallahassee, FL 32314-6668

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Internal Revenue Service
PO Box 7346
Philadelphia, PA  19101-7346

John E. Morand
11590 SW 38th Street
Ocala, FL 34481-1321

Marion County Tax Collector
503 SE 25th Avenue
Ocala, FL 34471-9181

Marion County Tax Collector
P.O. Box 970
Ocala FL 34478-0970

Reinaldo Torres
901 NW 22 Street
Ocala, FL 34475-4325

Secretary of the Treasury
15th & Pennsylvania Ave., NW
Washington, DC 20220-0001

Trina M. Morand
11590 SW 38th Street
Ocala, FL 34481-1321

U.S. Securities & Exchange Commission
Office of Reorganization
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, GA 30326-1382

United States Attorney
300 North Hogan St Suite 700
Jacksonville, FL 32202-4204

United States Trustee
c/o Scot Bomkamp
135 W. Central Blvd., Ste. 620
Orlando, FL 32801-2440

Rehan N. Khawaja +
817 North Main Street
Jacksonville, FL 32202-3028

United States Trustee - JAX 11 +
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

Elena L Escamilla +
Office of the United States Trustee
400 W. Washington Street
Suite 1100
Orlando, FL 32801

Jason A Burgess +
The Law Offices of Jason A. Burgess, LLC
118 West Adams Street, Ste. 900
Jacksonville, FL 32202-3818

Scott Bomkamp +
United States Trustee
400 W. Washington Street
Suite 1100
Orlando, FL 32801

Joshua Dawes +
The Law Offices of Jason A. Burgess
118 W. Adams Street
Suite 900
Jacksonville, FL 32202-3818

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Internal Revenue Service
400 West Bay Street
Jacksonville, FL 32202

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Centerstate Bank of Florida, Inc.

(u)Jerry A. Funk
Jacksonville

End of Label Matrix
Mailable recipients    26
Bypassed recipients     2
Total                  28